IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW A., ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> MICHELLE KING, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) | Case No. 1:22-cv-3158 <br><br> Magistrate Judge Jeannice W. Appenteng |

### MEMORANDUM OPINION AND ORDER

Plaintiff Matthew A. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

### BACKGROUND

Plaintiff applied for DIB on October 20, 2017 alleging disability since September 25, 2015 due to right knee dislocation with swelling and pain, damaged nerves in the left forearm, left ankle reconstruction with plate, anxiety, and high

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

blood pressure. Administrative Record ("R.") 168-69, 197. He subsequently amended the alleged onset date to October 1, 2017. R. 33, 1374. Born in May 1969, plaintiff was 46 years old as of the amended onset date, making him a younger person (under age 50). 20 C.F.R. § 404.1563(c). He later changed age categories to a person closely approaching advanced age (age 50-54). 20 C.F.R. § 404.1563(d); R. 168. Plaintiff worked for many years as a truck driver, then following a workplace injury, he took a position as a procurement clerk. R. 38-39, 198. He quit in October 2017 due to his conditions and has not engaged in substantial gainful activity since that date.

The Social Security Administration denied plaintiff's application at all levels of review. He appealed to the district court and the parties agreed the case should be remanded to the Commissioner for further proceedings. R. 1317-19. On July 1, 2021, the Appeals Council vacated the final decision of the Commissioner and remanded the case to an administrative law judge (the "ALJ") with instructions to properly consider plaintiff's mental health complaints. R. 1322-23. The ALJ held a supplemental hearing on November 8, 2021 and heard testimony from plaintiff, who was represented by counsel, and from vocational expert Jessica Bohne (the "VE").[2] R. 1282-1309. On February 15, 2022, the ALJ determined that plaintiff's degenerative joint disease, degenerative disc disease, coronary artery disease, obesity, and injury of the ulnar nerve of the left arm are all severe impairments, but that they do not alone or in combination with plaintiff's non-severe mental

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

2

impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 1262-66.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform sedentary work with: occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasional stooping, kneeling, crouching, and crawling; and frequent handling with the non-dominant left upper extremity. R. 1266-71. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could perform plaintiff's past work as a procurement clerk. R. 1271-72. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 1272. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ's RFC determination was flawed because it: (1) failed to account for his mental impairments; and (2) did not allow time for him to periodically ice his leg.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

**DISCUSSION**

A. **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct.

4

1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

B. Analysis

1. Mental Impairments

Plaintiff argues that the case must be reversed or remanded because the ALJ erred in finding that his mental impairments are non-severe, resulting in a flawed RFC determination. Dkt. 15 at 12. To the extent plaintiff is arguing that the ALJ made an error at Step 2 of the sequential analysis, the Court finds that any such error was harmless. "The Step 2 determination is 'a de minimis screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)). "As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process," making any error of omission at Step 2 harmless. *Esther V. v. Saul*, No. 19 C 8093, 2021 WL 1121123, at *4 (N.D. Ill. Mar. 24, 2021) (quoting *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir.

5

2010)). *See also Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *2 (N.D. Ill. May 31, 2019) ("[A]ny error at step two is harmless if the ALJ finds a claimant has any severe impairment and goes on to sufficiently address the aggregate effect of all the claimant's severe and non-severe impairments *later in his analysis*.") (emphasis in original) (citations omitted). Here, the ALJ found that plaintiff suffers from several severe impairments and so proceeded through the next sequential steps. (R. 1262-72). In such circumstances, any error the ALJ may have made at Step 2 was at most harmless and does not support remanding the case.

Plaintiff's challenges to the mental RFC are largely undeveloped and unsupported by any legal authority. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ considered plaintiff's impairments in combination and found that he has at most mild limitation in each of the four areas of mental functioning and needs no related restrictions in the RFC. R. 1262-65. Plaintiff generally disagrees with this assessment, citing select records he believes demonstrate greater impairment. Dkt. 15 at 12-15 (citing R. 1191-92, 1195, 1197, 1248, 1427, 1646, 1649, 1657-58). Yet the records merely indicate that plaintiff was diagnosed with anxiety

disorder and complained on several occasions of panic attacks and depressive symptoms, primarily in 2018. The ALJ acknowledged this evidence but also noted that between October 2015 and December 2021, plaintiff's mental status exams were almost entirely normal. R. 1263-64 (citing R. 349, 356, 556, 1003, 1008, 1011, 1020, 1028, 1033, 1039, 1042, 1046, 1049, 1051, 1058, 1060, 1069, 1073, 1077). *See Melissa G. v. Saul*, No. 18 C 50218, 2019 WL 4392995, at *3 (N.D. Ill. Sept. 13, 2019) ("Plaintiff's argument does precisely what it accuses the ALJ of doing: Plaintiff points to favorable facts that could support a disability finding while ignoring the unfavorable substantial evidence the ALJ relied on.").

Plaintiff objects that the normal exams are not probative of his functioning because they were conducted by orthopedists, cardiologists, and GI specialists. Dkt. 18 at 2-3. Plaintiff concedes that he never received specialized mental health care but says the ALJ should have focused on exams conducted by his primary care physician Roy Bardwell, D.O., who "was on notice for Plaintiff's depression." *Id*. at 2. This argument is unavailing because like plaintiff's other treaters, Dr. Bardwell routinely assessed him to be alert, oriented, and cooperative with no overt mental symptoms. The ALJ acknowledged that plaintiff was unable to see a psychologist due to insurance issues, but also observed that his symptoms nonetheless were well managed with Xanax as needed and Adderall for attention deficit disorder. R. 1144, 1195, 1197, 1217, 1248, 1263, 1264, 1267, 1646, 1649, 1675, 1679, 1683, 1685, 1695, 1697. Plaintiff fails to explain how this evidence demonstrates that his non-severe mental impairments restrict his ability to function in a work setting. *Weaver v.*

7

*Berryhill*, 746 F. Appx. 574, 579 (7th Cir. 2018) (plaintiff has the "burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work").

Also unavailing is plaintiff's suggestion that the ALJ failed to properly consider severe mental deficits reflected in a January 20, 2018 consultative exam with Phyllis Tolley, Ph.D., and an October 26, 2021 exam with Dr. Bardwell. The ALJ discussed Dr. Tolley's assessment in detail, including her observations that: plaintiff's mood was anxious; he appeared to have difficulty dealing with his ongoing medical conditions; and he demonstrated poor immediate recall of digits, fair recall of words, and poor delayed recall. R. 1263-64 (citing R. 1191-92). But the ALJ also noted that plaintiff was alert and oriented, had a sequential and goal-directed thought process, made coherent statements, and had fair fund of information, reasoning ability, and abstract ability. R. 1263-64 (citing R. 1192). Moreover, state agency reviewer Lionel Hudspeth, Psy.D. considered Dr. Tolley's exam and concluded that plaintiff does not have any functional limitations as a result of his mental impairments. R. 73-74. The ALJ found Dr. Hudspeth's opinion persuasive, R. 1270, and Plaintiff does not cite any contrary opinion in the record. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal").

8

As for the October 2021 exam with Dr. Bardwell, plaintiff makes much of the fact that he complained of fatigue and stated that "death cannot come quick enough." Dkt. 15 at 13; Dkt. 18 at 3 (citing R. 1657) (arguing that the comment "flies in the face of the ALJ's speculation that [plaintiff's] mental impairments were not severe and resulted in no mental limitations"). This single statement does not establish that plaintiff has disabling mental problems or specific functional restrictions, particularly given the years of minimal mental findings. Indeed, though Dr. Bardwell observed an anxious affect that day, he continued to prescribe nothing more than Xanax as needed and Adderall.[4] R. 1657-58.

All that remains is plaintiff's own testimony about his symptoms. Plaintiff testified that he frequently wakes up at night with panic or anxiety attacks. R. 1289. These attacks, which occur a couple of times per week and come out of nowhere, have no obvious trigger and make him feel overwhelmed and unable to focus. R. 1292, 1294, 1296. In addition, his heart rate increases, he experiences chest tightness, and feels like he cannot breathe. R. 1191. Plaintiff sometimes forgets when he has something cooking on the stove and has difficulty tracking conversations and multi-tasking. R. 1296. When he feels a panic attack coming on, he takes half a Xanax. R. 1292.

The ALJ discussed this testimony but found plaintiff's complaints of disabling mental limitations inconsistent with objective evidence showing largely

---

[4] For similar reasons, SSA agent C. Hall-Baumann's notation in an October 20, 2017 field office Disability Report that plaintiff had difficulty answering questions is not evidence of work-related mental deficits. Dkt. 15 at 12 (citing R. 194). Notably, Hall-Baumann also recorded no difficulties with understanding, coherency, talking, or concentrating. R. 194.

normal mental status exams. R. 1263-64, 1267. *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration"). The ALJ also noted that plaintiff was able to manage his symptoms with Xanax as needed. *Id*. This assessment is not patently wrong. *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) ("As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong"); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support").

Viewing the record as a whole, the ALJ did not commit reversible error in determining that plaintiff has no functional limitations stemming from his mental impairments. Plaintiff's request to remand the case for further consideration of this issue is denied.

**2.     Time Off-Task to Ice Leg**

Plaintiff argues that the case still requires remand because the ALJ failed to allow for time off-task and unscheduled breaks while he ices his leg. This argument is premised on Dr. Bardwell's recommendation that plaintiff use ice for 15-20 minutes at a time multiple times throughout the day. Dkt. 15 at 15; Dkt. 18 at 4-5 (citing, *e.g.*, R. 1171, 1178, 1245). Plaintiff posits that icing his leg would take him off task more than 9% of the workday, or require an excessive number of unscheduled breaks, which the VE testified would preclude all employment. *Id*. But

10

plaintiff does not cite any physician of record who suggested he would ever be off-task or need unscheduled breaks for any reason. Nor does he quantify how many times per day he ices his leg or show that he needs to ice his leg while working as opposed to during regular breaks. *See Marko L. v. Saul*, No. 16 C 9723, 2021 WL 843427, at *6 (N.D. Ill. Mar. 5, 2021) (ALJ properly rejected medical opinion as to leg elevation and icing where there was no description of the required "frequency, duration, and other details"). Plaintiff's mere speculation that he could not focus while icing his leg lacks any record support and is insufficient to establish work-preclusive limitations. *Stewart v. Berryhill*, 731 F. Appx. 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence").

Moreover, though plaintiff was represented by counsel at the administrative hearing, he failed to ask the VE about possible limitations stemming from a need to ice his leg or whether such a limitation would preclude work as a procurement clerk. *See, e.g., Keal v. Berryhill*, No. 1:16-CV-811-DML-SEB, 2017 WL 3224680, at *7 (S.D. Ind. July 31, 2017) (ALJ did not err in declining to consider plaintiff's past work as a composite job where his attorney did not "ask any question of the VE that might suggest any of [plaintiff's] past relevant work was a composite job"). Plaintiff also testified that he can concentrate watching television while icing his leg. R. 1299. And since the ALJ expressly acknowledged plaintiff's testimony about occasional use of ice, R. 1267 (citing R. 48), there is no concern that he ignored an entire line of evidence.

11

This Court will not reweigh evidence or substitute its judgment for the ALJ's determination. *Warnell*, 97 F.4th at 1052-53. Viewing the record as a whole, the ALJ did not err in omitting a restriction related to plaintiff's need to ice his leg, and that decision is supported by substantial evidence. *See Salvador H. v. Kijakazi*, No. 22 C 7254, 2023 WL 5017944, at *5 (N.D. Ill. Aug. 7, 2023) (citing *Biestek*, 139 S. Ct. at 1154) ("The 'substantial evidence' standard is not a high hurdle to negotiate").

## CONCLUSION

For the reasons stated above, plaintiff's request to reverse or remand the case [15] is denied, and the Commissioner's motion for summary judgment [17] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

                                                **Jeannice W. Appenteng**
                                                **United States Magistrate Judge**